# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **MIMO RESEARCH, LLC,** | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO. 6:22-cv-542-ADA** |
| **INTEL CORPORATION,** | § | **JURY TRIAL DEMANDED** |
| **Defendant**. | § | |

## INTEL CORPORATION'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1
II.   LEGAL STANDARDS ................................................................................................. 1
      A.    Rule 12(b)(6) Motion for Failure to State a Claim ............................................. 1
III.  THE PATENTS-IN-SUIT ............................................................................................. 3
      A.    The '854 Patent .................................................................................................. 3
      B.    The '166 Patent .................................................................................................. 4
IV.   MIMO RESEARCH FAILS TO STATE A CLAIM FOR INFRINGEMENT .................. 6
      A.    The Accused Intel Chips Are Not Capable of the Accused Sensing Operation. .... 6
      B.    The Asserted Claims Require a Hardware Implementation.  MIMO Research
            Does Not Accuse Any Hardware. ........................................................................ 9
      C.    Conclusion ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................1, 2, 6, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................1, 2, 6, 15

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ............................................................................................2, 15

*Carter v. Target Corp.*,
  541 F. App'x 413 (5th Cir. 2013) .........................................................................................1, 9

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ....................................................................................................1

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
  No. SA-18-CV-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) ...........................2, 9

*Johnson v. Sawyer*,
  47 F.3d 716 (5th Cir. 1995) ......................................................................................................7

*Vervain, LLC v. Micron Tech., Inc.*,
  No. 6:21-cv-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) .....................................2

*VTX Commc'ns, LLC v. AT&T Inc.*,
  No. 7:19-CV-00269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) .........................................7

*Wolcott v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) ....................................................................................................1

**Statutes**

35 U.S.C. § 271(a) .........................................................................................................................2

**Other Authorities**

47 C.F.R. § 15(e) ............................................................................................................................8

47 C.F.R. § 15.403 (2022) ..............................................................................................................7

Fed. R. Civ. P 12(b)(6) ...........................................................................................................1, 7, 8

**I.      INTRODUCTION**

Plaintiff MIMO Research, LLC ("MIMO Research") sued Intel Corporation ("Intel") on May 27, 2022 [Dkt. 1], alleging direct infringement of two patents, U.S. Patent Nos. 7,091,854 ("'854 Patent") and 7,200,166 ("'166 Patent"). Compl. ¶¶ 46, 65 ("Dkt. 1" or "Complaint"). Intel now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**II.     LEGAL STANDARDS**

**A.      Rule 12(b)(6) Motion for Failure to State a Claim**

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must include more than "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citation omitted).  And "[w]hile it is true that [a court] must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.'" *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). When assessing a Rule 12(b)(6) motion, the Court "may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

To state a claim for direct infringement under 35 U.S.C. § 271(a), the facts must show that accused product could plausibly be the patented invention. *See Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019) (a "plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."). A plaintiff cannot satisfy the *Iqbal/Twombly* standard "by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate ***why*** it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).[1]

This Court has held whether allegations of infringement meet the pleading standard under *Twombly* "depends on multiple factors, not limited to 'the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.'" *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *1-2 (W.D. Tex. Jan. 3, 2022) (citing *Bot M8,* 4 F.4th at 1353). "[A] higher level of detail in pleading infringement may—depending on the complexity of the technology—be demanded for elements clearly 'material' to novelty and non-obviousness. In cases involving complex technology, a complaint nakedly alleging that the accused product practices the claimed invention's point of novelty will rarely suffice." *Id.* at *5.

---

[1] Unless otherwise noted, all emphasis is added.

### III. THE PATENTS-IN-SUIT

#### A. The '854 Patent

The '854 Patent describes a purported improvement to wireless "sensor networks." The patent background states, "[c]onventional deployments of sensor networks communication often scatter multiple sensors over a limited geographic region in order to collect data of interest." Dkt. 1-1 ('854 patent), 1:10-13. Figure 1, reproduced below, depicts a number of "wireless sensor node and transceiver" devices 110a-k.



*Id.*, Fig. 1.

Each wireless sensor node and transceiver 110 contains a sensor array unit 210, which in turn "contains M sensor nodes in parallel to form an array. Each of these sensors is a multimode sensor device, which can be turned to sensor different input signals." *Id.*, 5:3-6. Examples of "data of interest" collected by these sensors include "detection … for biological, chemical and/or radiological weapons," the sounds emitted by a ship in the ocean, "ground temperature," and

3

"patient health and movement status." *Id.*, 1:60-2:15. *See also* Abstract ("Every sensor node of the MIMO sensor networks communication is to support ***data collection,*** signal processing and analysis, and transmission fashion.").

The collected environmental data is passed to a "signal processing and data computing unit 230" that "performs the signal processing based on the collected data to provide surveillance, reconnaissance, target identification, registration and disposition, or anything else along those lines and then passes the useful data information into the MIMO transceiver 240." *Id.*, 5:24-29.

Asserted claim 15, reproduced below, requires both a "sensor array unit coupled to an analog-to-digital converter unit" and a "multiple-input multiple-output [MIMO] space-time transceiver that is connected to" two or more antennas:

> 15.  A wireless multiple-input multiple-output sensor node and transceiver system comprising:
> > a **sensor array unit**[2] coupled to an analog-to-digital converter unit;
> > the analog-to-digital converter unit coupled to a signal processing and data computing unit;
> > the signal processing and data computing unit coupled to **a multiple-input multiple-output space-time transceiver** that is connected to N antennas, where N is an integer greater than one;
> > a memory bank coupled to the analog-to-digital converter unit, the signal processing and data computing unit, and the multiple-input multiple-output space-time transceiver;
> > a power generator coupled to a power unit; and
> > the power unit coupled to the sensor array unit, the analog-to-digital converter unit, the signal processing and data computing unit, and the multiple-input multiple-output space-time transceiver.

*Id.*, 9:35-45.

### B.   The '166 Patent

The '166 patent discloses a "dual-mode ultra wideband (UWB) communication transceiver" that is designed "to implement two disparate systems for indoor and outdoor UWB operations."

---

[2] All emphases added unless otherwise noted.

Dkt. 1-2 ('166 patent), Abstract. The transceiver utilizes a "dual-mode architecture of the digital lowpass-shaping FIR transmitter filters for indoor and outdoor operations. . . ." *Id.*, 10:62-65. The architecture includes multiple memory banks, where "memory bank 1814 contains the indoor digital enlarged lowpass-shaping FIR transmitter filter coefficients 720," and the "memory bank 1816 includes the outdoor digital enlarged lowpass-shaping FIR transmitter filter coefficients 1020." *Id.,* 11:4-8. As shown below in Figure 18, the memory banks 1814 and 1816 feed into a multiplexer 1820. "A selectable unit 1822 controls a multiplexer (MUX) unit 1820 to select either the memory bank 1814 or the memory bank 1816. . . ." *Id.,* 11:19-21.



FIG. 18

*Id.*, Fig. 18. By enabling the toggling of memory banks 1814 or 1816, the filter may use either the indoor 720 or outdoor 1020 FIR filter coefficients to "operate[] with the input samples in the data memory bank 1812 by using a multiple and accumulate (MAC) unit 1826 to produce the filter output y[n]." *Id.,* 11:23-26.

Asserted claim 11, reproduced below, is directed to a "dual-mode implementation system of a digital lowpass-shaping FIR transmission filter," including, *inter alia,* memory banks, MAC units, a MUX, and a selectable unit:

> 11. A dual-mode implementation system of a digital lowpass-shaping FIR transmission filter comprising:
> a set of memory banks;
> a set of counter units;
> a set of multiply and accumulate (MAC) units;
> a pre-addition unit;
> a multiplexer (MUX) unit; and
> a selectable unit.

*Id*., 16:4-11.

## IV.     MIMO RESEARCH FAILS TO STATE A CLAIM FOR INFRINGEMENT

### A.     The Accused Intel Chips Are Not Capable of the Accused Sensing Operation.

MIMO Research fails to state a plausible claim for infringement under the *Iqbal/Twombly* pleading standard. Plaintiff accuses Intel WiFi 6 chipsets of infringing claim 15 of the '854 patent. These WiFi chipsets are designed to be used in client devices such as laptops and add-on WiFi network interface cards (NICs). *See, e.g.*, Padmanabhan Decl. Ex. A (*Intel Wi-Fi 6 AX200 (Cyclone Peak 2) External Product Specification (EPS)*) ("The Intel® Integrated Connectivity Wi-Fi 6 AX200 . . . is an M.2 connectivity module for notebooks, tablets, and PCs.").

Plaintiff alleges that the Accused Intel Products include two antennas and "Balanced Diplexers" in the RF section of the Accused Products that "receive[] data in the form of Wi-Fi and BT signals" and satisfy the claimed "sensor array unit" limitation. *See* Compl. ¶ 34, reproduced below (annotations in original):



*Intel Wi-Fi 6 AX200 (Cyclone Peak 2) External Product Specification (EPS)*, INTEL DOCUMENTATION at 12 (March 2019) (annotation added).

MIMO Research's complaint alleges that the antennas and Balanced Diplexers constitute a "sensor array unit" by alleging that these "enable dynamic frequency selection ('DFS') for detecting radar pulses when operating in the 5 GHz band." Compl. ¶¶ 34–35. "Dynamic Frequency Selection (DFS) is a mechanism that dynamically detects signals from other systems and avoids co-channel operation with these systems, notably radar systems." 47 C.F.R. § 15.403 (2022).[3]

MIMO Research's allegation regarding what constitutes a "sensor array unit" is flatly contradicted by the very evidence it cites to support it. MIMO Research's complaint cites a report submitted by Intel to the FCC—*Intel Wi-Fi 6 AX201 Federal Communications Test Report*, Report No. 180717-04.TR06 (Oct. 16, 2018) (Padmanabhan Decl. Ex. B)[4]—to support its allegation that

---

[3] Courts routinely take judicial notice of Federal Regulations. *Johnson v. Sawyer,* 47 F.3d 716, n.36 (5th Cir. 1995) ("We, of course, take judicial notice of federal regulations." (citing MCCORMICK ON EVIDENCE § 335 at 939 (3d ed. 1984)). *See also VTX Commc'ns, LLC v. AT&T Inc.,* No. 7:19-CV-00269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) (taking judicial notice of a Federal Communications Commission document in assessing a Rule 12(b)(6) motion).

[4] Mimo Research accuses the following Intel products of infringement: Wi-Fi 6 Series Products (AX200, AX201, AX210, AX1675, AX1650 i/s, AX1650 x/w) ("the Accused Intel '854 Products").

the accused products use DFS, and thus have a "sensor array unit." Compl. ¶¶ 34-35. But the report in fact states that the Equipment Under Test ("EUT"), an accused Intel WiFi 6 AX201 WiFi adapter card, was operated in a client only mode *without* radar detection. *Id.* at 4 ("The operating mode of the sample is client only without radar detection."). Thus, the tested client was not able to perform detection of radar signals. Furthermore, MIMO Research's cited evidence lists the "DFS Detection Threshold"[5] verdict as "Not Applicable" ("NA") because the device **lacks** dynamic frequency selection capabilities. *Id.* at 4 (reproduced and annotated below):

| 7. Test Verdicts summary | | | |
|---|---|---|---|
| 7.1. Dynamic frequency selection | | | |
| FCC part | RSS part | Test name | Verdict |
| 15.407 (h) (2) | RSS-247 part 6.3 | Non Occupancy Period | P |
| | | DFS Detection Threshold | NA |
| | | Channel Availability Check Time | NA |
| | | Uniform Spreading | NA |
| | | U-NII Detection Bandwidth | NA |
| | | DFS Detection Threshold | NA |
| | | Channel Closing Transmission Time | P |
| | | Channel Move Time | P |
| | | U-NII Detection Bandwidth | NA |

In short, MIMO Research's allegations are directly contradicted by the evidence it cites in support of those allegations.[6] "'[C]onclusory allegations and unwarranted deductions of fact are

---

[5] DFS Detection Threshold is "[t]he required detection level defined by detecting a received signal strength (RSS) that is greater than a threshold specified, within the U-NII device channel bandwidth." 47 C.F.R. § 15.403.
[6] While the Fifth Circuit has not directly addressed what constitutes an "incorporation by reference," the Intel FCC test report was incorporated into MIMO's complaint even under the more stringent test applied by the Ninth Circuit: "We have extended the doctrine of incorporation by reference to consider documents in situation where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th. Cir. 2010). And at a minimum, the Court may consider the test report, attached hereto as Exhibit B, because it is "central to" MIMO's claim. "In reviewing a dismissal under Rule 12(b)(6), the court may consider: (1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. . . ." *Little v. USAA Cas. Ins. Co.*, No. 09-30948, 2010 WL 4909869, at *2 (5th Cir. Apr. 2, 2010) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007)).

not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." *Carter v. Target Corp.*, 541 F. App'x at 417 (citation omitted).  Thus, Plaintiff has failed to "plead facts that plausibly suggest that the accused product[s] meet[]" the "sensor array unit" limitation even under its own theory of infringement, because contrary to its allegations, the accused products do not perform DFS detection. *Encoditech*, 2019 WL 2601347, at *3. Accordingly, the Court should dismiss MIMO Research's claim for direct infringement of '854 Patent with prejudice.

> **B.  The Asserted Claims Require a Hardware Implementation but MIMO Research Does Not Accuse Any Hardware.**

MIMO Research's Complaint also fails to state claim for direct infringement of '166 Patent. Asserted claim 11 of the '166 patent is an apparatus claim that recites "a dual-mode implementation system of a digital lowpass-shaping FIR transmission filter" containing various hardware limitations including "a set of memory banks," "a set of counter units," "a set of multiply and accumulate (MAC) units," a "pre-addition unit," a "multiplexer (MUX) unit," and a "selectable unit." Dkt. 1-2, 16:4-11.

MIMO Research accuses Intel FPGA IP Cores, Intel FPGA IP Base Suite, Intel Quartus Prime Pro Edition, and Intel Quartus Prime Standard Edition that include the FIR II Intel FPGA IP Core (the "Accused Intel '166 Products").  Compl. ¶ 51.  Each of the Accused Intel '166 Products is a software package that Intel makes available to customers.  Specifically, MIMO accuses "[t]he Altera® FIR II IP core" provided within these software packages, on the basis that "[t]he Altera® FIR II IP core provides a fully-integrated finite impulse response (FIR) filter function." *Id*. ¶ 53 (citing Intel FIR II IP Core User Guide, May 2016 at 4 (Padmanabhan Decl. Ex. C)).

9

A review of the Intel document cited[7] by MIMO Research in its complaint reveals that the Accused Intel '166 Products cannot be accused of direct infringement of claim 11 of the '166 patent. MIMO Research's cited document makes clear that MIMO Research accuses software design packages for use by Intel's customers in their circuit *designs*—i.e., it is not an actual "implementation" with various hardware components as required by claim 11.  For example, the Intel User Guide MIMO cites explains "[t]he Altera IP Library provides many useful IP core functions *for your production* use without purchasing an additional license."  Padmanabhan Decl. Ex. C at 2-1.  *See also* FIR II IP Core User Guide, June 2020 (Padmanabhan Decl. Ex. D) at 13: ("[t]he Intel Quartus® Prime software installation includes the Intel FPGA IP library.  This library provides many useful IP cores *for your production use* without need for an additional license.") Similarly, the documentation regarding the "FIR II IP Core" states that "[t]he Altera® FIR II IP core provides a fully-integrated finite impulse response (FIR) filter function *optimized for use with Altera FPGA devices*." Padmanabhan Decl. Ex. C at 1-1. Put another way, a user has to manipulate the software, and must load it onto a piece of FPGA hardware in order to have an actual hardware apparatus that can be alleged to infringe claim 11 of the '166 patent.

The May 2016 User Guide MIMO cites in its complaint describes the design flow that customers employ to generate products using the FIR II IP Core:  first the user must "[s]imulate the behavior of a licensed IP core in [his or her] system," then "[v]erify the functionality, size, and speed of the IP core," followed by "[g]enerat[ing] time-limited device programming files for designs that include IP cores."  The May 2016 User Guide explains that Intel customers must

---

[7] As with the Intel FCC Test report discussed above, the FIR II IP Core User Guide was incorporated by reference in MIMO's complaint, and at a minimum, "referred to in the plaintiff's complaint and … central to the plaintiff's claim." *Little*, 2010 WL 4909869 at *2.

10

"*[p]rogram a device with [their] IP core and verify [their] design in hardware*" as the final step of the design process. Padmanabhan Decl. Ex. C at 2-1.

The same May 2016 User Guide MIMO cites in its complaint describes the generation of IP Cores using the "IP Parameter Editor." *Id.* at Figure 2-2, reproduced below:



The guide upon which MIMO relies in its complaint further makes clear that *users* must design specific FIR Filters using the IP Parameter Editor. *Id.* at 3-1: ("You define a FIR filter by its coefficients. *You specify the filter settings and coefficient options in the parameter editor.*") In the case of the FIR II IP Core MIMO Research identifies as purportedly infringing the '166 patent, the May 2016 User Guide states, "[t]he II IP core has an interactive parameter editor that

11

allows you to easily **create custom FIR filter**s. . . . .You can use the parameter editor to **implement a variety of filter types**. . . ." *Id.* at 1-1. The 2016 User Guide further explains, "[t]o design a filter, identify coefficients that match the frequency response **you specify for the system. . . .** You can change which signal frequencies pass through the filter by **changing the coefficient values in the parameter editor**." *Id.; see also* Compl. ¶ 53.

After specifying the parameters for a particular design using the FIR II IP Core, a user of the accused Quartus software must then generate the HDL files and simulation files for testing and simulation. The 2016 User Guide states "[t]he parameter editor outputs IP functional simulation model files for use with Verilog HDL and VHDL simulators. *See also* pp. 2-7 to 2-8: ("**The Quartus Prime software generates simulation files for each IP core during IP generation**. . . . *[Y]ou can use* the functional simulation model and testbench or **example design generated with your IP core for simulation**.")

Figure 3 of the June 2020 User Guide (reproduced below) similarly describes the current design flow that can be employed by an Intel customer using the Accused Intel '166 Products.



Padmanabhan Ex. D, Fig. 3. First, the user installs the Quartus Prime Software with the Intel FPGA IP library. Then the user parameterizes and instantiates a particular IP core, following the same procedure as discussed in the May 2016 User Guide. *Id.* at 4. Figure 4 of the 2020 User Guide depicts the user interface of the parameter editor customers use to design a custom FIR filter:



Figure 4.  IP Parameter Editor (Intel Quartus Prime Standard Edition)

Padmanabhan Ex. D (User Guide), 17.  The 2020 User Guide explains that "[t]he parameter editor outputs IP functional simulation mode files for use with Verilog HDL and VHDL simulators." *Id.*, 4.  The user then proceeds to step three in the flow diagram of Figure 3 to "verify the IP in a supported simulator."  *See id.* at 21 ("The Intel Quartus Prime software supports IP core RTL *simulation* in specific EDA simulators.")  After simulation, the user "Compile[s] the Design in the Intel Quartus Prime Software," (Fig. 3, step four), where "the Compiler only generates a time-limited device programming file (<*project name*>`_time_limited.sof`) that expires at the time limit." *Id.* at 14, 15.  These device programming files are specific to a particular Intel FPGA device family and can be used to "Program the Intel FPGA Device and Verify Operation on the Board" (Fig. 3, step six). After iterations of design and verification, the designer determines the "IP is ready for production use" (Fig. 3, step seven), purchases a full production IP license, and finally is able to "Include Licensed IP in Commercial Products." *Id.* at 15.

    The 2016 document cited by MIMO Research in its complaint, as well as the current 2020 version of that document, make clear that the Accused Intel '166 Products are not a "dual-mode

implementation system of a digital lowpass-shaping FIR transmission filter," but rather, they are software design kits that a customer can use to design and implement a filter on an FPGA. Padmanabhan Decl. Ex. C at 2-1. *See also* Padmanabhan Decl. Ex. D at 4. In short, MIMO Research's conclusory allegation that Intel sells a FIR filter apparatus is contradicted by the very documents it cites. This falls far short of the standard for pleading direct infringement under *Twombly* and *Iqbal*, and this Court should dismiss Count II with prejudice. *Bot M8 LLC*, 4 F.4th at 1353.

### C. Conclusion

For the reasons stated above, Defendant Intel respectfully requests that the Court dismiss MIMO Research's claims of direct infringement with respect to the '854 patent (Count I) and '166 patent (Count II).

DATED: September 16, 2022

Respectfully Submitted,

By : */s/ Nimalka Wickramasekera*
Nimalka R. Wickramasekera *(pro hac vice pending)*
nwickramasekera@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543
Tel: 213-615-1700
Fax: 213-615-1750

Krishnan Padmanabhan *(pro hac vice pending)*
kpadmanabhan@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: 212-294-6700
Fax: 212-294-4700

Robert N. Kang
rkang@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5840
Tel: 415-591-1000

Fax: 415-591-1400

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone:  (214) 453-6500

Barry K. Shelton
Texas Bar No. 24055029
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6407
Facsimile: (214) 453-6400
bshelton@winston.com

ATTORNEYS FOR DEFENDANT
INTEL CORPORATION

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the above document has been served on September 16, 2022 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per the Local Rules.

<em>s/ Nimalka R. Wickramasekera</em>